CITY OF MURFREESBORO v. HAYNES.—82 S. W. (2d) 236.

Middle Section.   February 7, 1935.

Petition for Certiorari Denied by Supreme Court, May 17, 1935.

654

A. B. Huddleston, C. L. Cummings, and J. J. Jewell, Jr., all of Murfreesboro, for City of Murfreesboro.

C. C. Jackson and Hancock & Hancock, all of Murfreesboro, for Mrs. R. F. Haynes.

DeWITT, J.   The plaintiff below, Mrs. R. F. Haynes, was, at the time of the institution of this action, the owner of an estate for her life in a farm of about 300 acres, situated along Stones river, one mile or more from the city of Murfreesboro. She resided on the farm. Her mansion house was situated about 1,700 feet from a plant main-

tained by the city of Murfreesboro, about 100 feet from Stones river, for the disposal of sewage carried to it in underground sewer pipes from the residences, stores, public buildings, and other places in the city. Mrs. Haynes brought this action against the city of Murfreesboro to recover damages from the alleged effects of the maintenance of said disposal plant as a nuisance.

In the declaration it is charged that the city of Murfreesboro committed, to the plaintiff's damage, a nuisance in the construction, maintenance, and operation of its sewage disposal plant; that the plant was managed in a negligent and careless manner by permitting partly digested sewage and chemicals to be discharged into Stones river, leaving deposits in the river which killed the vegetation therein and ruined plaintiff's farm; that the affluent or sludge was negligently and carelessly permitted to remain in the disposal plant for days and months so as to decay; that thereby were created noxious, disagreeable, and offensive odors, which filled and charged the atmosphere so as to render the enjoyment of life and of plaintiff's property uncomfortable and almost unbearable; that the farm was greatly damaged for agricultural purposes, and the residence thereon in which the plaintiff lived was impaired in value.

The action was brought by Mrs. R. F. Haynes as tenant for her life and by her children as remaindermen, but the trial judge sustained a defense made by demurrer that there was a misjoinder of parties; whereupon the plaintiffs duly excepted and under protest withdrew the names of the remaindermen as plaintiffs, leaving the cause standing in the name of Mrs. R. F. Haynes as sole plaintiff. The court then overruled the remaining portions of the demurrer and ordered the defendant to plead over, which was done by interposing a plea of the general issue and also pleas of the statutes of limitation of twelve months and three years. These pleas of the statutes of limitation are not involved upon this appeal in error, for the trial judge charged the jury that whatever damages Mrs. Haynes was entitled to recover must be limited to three years preceding the action; and he also told the jury that the plea of the statute of one year was insufficient, and that he withdrew it from their consideration for the reasons that this was not an action for permanent but recurring injuries to the plaintiff's lands, and that she was only a tenant for life of said land.

Upon the trial, in which a large amount of evidence was presented, the jury returned a verdict in favor of the plaintiff for $600; and from a judgment upon this verdict and from the overruling of the motion for new trial, the city of Murfreesboro has appealed in error to this court.

The city of Murfreesboro owns a tract of 100 acres of land containing this disposal plant, which was erected in 1928. It consists

of a large tank with concrete base and wall surrounding it, and above the wall it is inclosed with corrugated iron up to the roof, with exception that on one side and probably on another side it is open just under the roof for a few inches. From this tank a stream of water runs for about 100 feet into Stones river.

Mrs. Haynes resided on the farm with her son, Bryan Haynes, who had sole charge of the operation of the farm under an arrangement which is not clearly explained in the evidence. Mrs. Haynes testified that under her contract with her son she was an equal partner with him, to the extent of being entitled to half of the income from the farm; but he testified that he not only had sole charge of the operation of the farm, paid the taxes and insurance premiums, operated a dairy, had some share croppers and raised some crops, but also that he received all the benefits from the operation of the farm, 'except that his mother lived there and whenever she wanted any money he furnished it to her.

There is abundant evidence that for the preceding three years at least, especially during the warm seasons, noxious and offensive odors came from this disposal plant to the residence of the plaintiff; that many times the doors and windows had to be shut; that often the occupants would wake up in the night nauseated; that they could not sit on the porches; that there was a continuous flow of polluted water from the tank into the river; that the river, especially when it was low, had many dead fish and much dead vegetation below the mouth of the stream coming from the tank; that after a rise in the river it would contain a slimy substance that came from the disposal plant; and that this came along by the farm and rendered the river unavailable to the occupants of the farm for stock water or for bathing.

This action is not for damages for personal injuries, but for injuries to the property and to the enjoyment of the home. It is based upon nuisance resulting in such injuries. Code, section 11169 (Shannon's Code, section 6751), declares that ''the causing or suffering any offal, filth, or noisome substance to be collected or remain in any place to the prejudice of others, and the corrupting or rendering unwholesome or impure the water of any river, stream, or pond, are nuisances.'' In State v. Mayor, etc. of Knoxville, 12 Lea, 146, 47 Am. Rep., 331, it is said:

''That smoke or noxious vapors which materially corrupt the air, rendering the occupation of houses near by uncomfortable as habitations is a nuisance, is settled by the uniform current of authorities. That the owner or occupier of houses, whether in the city or country, has the right to enjoy pure and wholesome air, that is, as pure and wholesome as their local situation can reasonably supply, and any act which materially corrupts or pollutes the air, done without authority

or justification is strictly a nuisance, is well settled by authority. See Wait's Actions and Def., Vol. 4, 748, authorities cited. This is all clear.''

■ It is well settled that a municipality or county, in the construction of a public work, is not privileged to commit a nuisance, to the special injury of the citizens, and for such act is liable to a private individual in damages. Pierce v. Gibson County, 107 Tenn., 224, 64 S. W., 33, 55 L. R. A., 477, 89 Am. St. Rep., 946; Chattanooga v. Dowling, 101 Tenn., 342, 47 S. W., 700; Chandler v. Davidson County, 142 Tenn., 265, 218 S. W., 222; Kolb v. Knoxville, 111 Tenn., 311, 76 S. W., 823.

■ For temporary or recurring nuisance, damages may be recovered from time to time for impairment of the use and enjoyment of the property; and the measure of such damages will be the injury to the value of the use and enjoyment, which may be measured to a large extent, by the rental value of the property, and to what extent that rental value is diminished. Terminal Co. v. Lellyett, 114 Tenn., 368, 85 S. W., 881; Fox v. Corbitt, 137 Tenn., 466, 194 S. W., 88; Walton-McDowell Co. v. Jackson, 5 Tenn. Civ. App., 324; Love v. Nashville Agricultural & Normal Institute, 6 Tenn. App., 104, 111; Nashville v. Comar, 88 Tenn., 415, 12 S. W., 1027, 7 L. R. A., 465.

■ In ascertaining the damages for such nuisance, the difference in the market value of the property cannot be considered. Harmon v. Railroad, 87 Tenn., 614, 11 S. W., 703; Nashville v. Comar, supra; Doss v. Billington, 98 Tenn., 375, 39 S. W., 717. Such difference can only be considered in ascertaining damages for injuries from a permanent nuisance.

■ ■ Inasmuch as Mrs. Haynes was residing on the land and in the main residence, she was using and enjoying the property. This appears without dispute, so that she would be entitled to sue for damages for injuries to the value of her own use and enjoyment. There is no evidence that her son was tenant of the entire estate under a lease from her. He was at most a cotenant with her upon some profit-sharing basis. The verdict for $600 is not excessive as covering her own damages while she lived on the farm. There is no evidence that she and her son suffered any pecuniary loss of income for the three years from the nuisance complained of; and the instruction given by the trial judge that it was immaterial whether she was in actual control or had it rented to another was unnecessary. However, as the judgment may be viewed as covering reasonably her own separate damages, this instruction will not be treated as reversible error.

The trial judge, over objections, admitted testimony tending to show a diminution of the market value of the property, but in his instructions he told the jury that the measure of damages was the

depreciation in the rental value of the property since the erection and maintenance of the plant. He then said:

"The loss of the use of the river for stock water, for bathing, swimming or fishing purposes, the cost if any shown in the proofs, of erecting and/or maintaining a water supply by electric power (the cost of power), or other mechanical means. The inconvenience if any shown of this method of watering the stock as compared to the use of the river, the inconvenience in cultivating the farm on account of the alleged offensive odors as shown by the proofs, the effect upon the health and comfort of those living on the premises, if any shown in the proofs, also you will look to the depreciation in value of the property upon the market on account of this alleged nuisance, but you will only look to the market value or the depreciation of the market value of the farm as an aid or guide to you in arriving at the depreciation of the rental value of the farm.

"This action being for recurring injuries you will only consider the damages to the plaintiff during the time of three years next preceding the bringing of this suit, and you will arrive at this amount by considering such of the measures of damages, mentioned above as shown by the proofs only, as measures or guides, but you from all or such of these as are shown by the proofs find the amount of damages actually inflicted or suffered."

Thus the jury were instructed that depreciation in the market value could be looked to, but only as an aid or guide in determining the depreciation in the rental value.

■ The plaintiff, being only the owner of a life estate, could not alone recover for injury to the fee, even if this were a permanent nuisance. However, this is not more than a temporary or recurring nuisance. There is no claim that the city had no legal right to erect and maintain this plant. The cause of action stated in the declaration is injuries, from noxious odors, to the use and enjoyment of the land and to the agricultural value thereof. There is no evidence that the plaintiff herself suffered any diminution of income from the land because of the maintenance of the plant. The damages awarded represent reasonably, according to the evidence, a compensation to her for impairment of her own use and enjoyment as an occupant of the land. At the rate of $200 a year for three years, this does not appear to be excessive. Clearly, the verdict was intended to represent such compensation. It appears without dispute that the odors could be kept down by the use of chlorine in the disposal plant, although it would be expensive; and this fact makes it certain that this is not a permanent nuisance.

■ There was much evidence as to impairment of rental value without looking to any depreciation in market value of the property itself—substantial evidence aside from this market value that the

depreciation in rental value was considerably more than $600. We cannot say that the jury looked beyond this evidence, and we may treat as immaterial the instruction that diminution in market value might be considered as an aid and guide in determining the extent of impairment of rental value. Whether it was error or not, it manifestly did not affect the result. Code, section 10654.

█ There was no evidence as to the cost of erecting and maintaining an electrical apparatus for furnishing a supply of water. This is not specifically set forth in the declaration. But it is averred therein that the refuse from the plant contaminated the water in the river adjoining the farm; and there is some evidence to sustain this averment.

As there was no proof of the cost of an electric pumping plant, the instruction on this matter was a mere abstraction and surplusage.

█ In the trial of this cause some things were inadvertently done, but in our opinion none of them amounts to error for which the judgment should be reversed. The city adduced much evidence tending to contradict the testimony of the plaintiff's witnesses as to the extent of bad odors and of injuries to the plaintiff's use of the property; but the jury has settled these conflicts and their finding is conclusive upon this court. The verdict is moderate and is supported by a large amount of competent evidence. We think that the city has had a fair trial and that the errors complained of were not of such materiality as would warrant the conclusion that without them the result would have been different.

All of the assignments of error are overruled and the judgment of the circuit court is affirmed. A judgment will be entered in this court in favor of Mrs. R. F. Haynes against the city of Murfreesboro for the sum of $600 with interest from July 17, 1933, the date of the judgment in the circuit court, and all costs of this cause. The costs of the appeal will also be adjudged against the sureties on the appeal bond.

Faw, P. J., and Crownover, J., concur.