**James Paul ALDRIDGE, et ux Margaret Aldridge, Peter Alliman, Curtis L. Morgan, Angelita J. Ezell, Claude Evans, Jr., and Betty Warhurst, Plaintiffs–Appellees,**

**v.**

**Henry MORGAN and wife, Sharon Morgan, Defendants–Appellants.**

Court of Appeals of Tennessee, Eastern Section.

May 23, 1995.

Permission to Appeal Denied by the Supreme Court Oct. 2, 1995.

---

Clifford E. Wilson, Madisonville, for appellants.

Sharon G. Lee, Lee & Alliman, Madisonville, for appellees.

## OPINION

McMURRAY, Judge.

The appellees are property owners in Lake View Subdivision, a portion of Corntassel Estates, Vonore, Tennessee. The appellant is also the owner of two lots in the subdivision. The appellees instituted this action asserting that the appellants were in violation of the restrictive covenants on the subdivision. They further asserted that the use of the appellant's property was such as to create a nuisance. After a bench trial, the chancellor issued his memorandum opinion and findings of fact and resolved the issues in favor of the appellees. This appeal resulted. We affirm the judgment of the trial court.

For convenience, we will refer to the appellees hereinafter as the plaintiffs and the appellants as defendants.

The defendants present the following issues for our consideration:

1. Did the chancellor abuse his discretion in denying the defendants' motion that he recuse himself from the trial of the case?

2. Was the chancellor correct in overruling the defendants' motion to dismiss?

3. Was the trial court correct when it found that the residence of the defendants was not substantially complete in violation of the restrictive covenants and ordering "that there must be a substantial completion of the residence of the defendant's by September, 1994.

4. Was the trial court correct when it found that the materials located on the property of the defendants were trash, junk and debris and same constituted a nuisance and then ordering that same be removed from defendants' property.

■ We will first consider the defendants' motion for the trial judge to recuse himself. The grounds stated in the motion that the

"attorney for the plaintiffs, Sharon Lee, along with the plaintiff, Peter Alliman are interested in the outcome of the action as landowners as they own lots which adjoin the defendants' lots in the Lake View Subdivision and since Sharon Lee and Peter Alliman have regularly appeared before ... the court for approximately 15 years that a reasonable defendant in this matter would conclude that [the trial judge] might have a tendency to lean in favor of the plaintiffs on account of that relationship, all else being equal."

From these naked allegations, alone, unclothed by affidavits or other evidence, we are asked to determine if the trial judge abused his discretion. We are unable to do so. Additionally, it would seem remiss on the part of the plaintiffs' attorney, Sharon Lee, if she were not, in fact, interested in the outcome of the lawsuit. Further, I think we can presume with some degree of certainty, that the plaintiffs are interested in the outcome, else they would never have instituted the action. Additionally, we suspect, that if proper affidavits had been filed, they would reveal that the defendant's attorney had practiced before the trial judge longer than either the plaintiff, Alliman, or his attorney, Sharon Lee. We find no merit in this issue.

As to the second issue, the defendants responded to the complaint with a motion to dismiss. The grounds stated for the motion to dismiss are (1) the complaint fails to state a cause of action; (2) that the restrictions referred to in the complaint are so vague and are so lacking with regard to any objective standards by which the court can determine whether or not a violation of the standards has occurred so as to render said restrictions unenforceable; and, (3) that the general allegations of nuisance are not supported by any factual allegations to which as a matter of law support a finding by the court that a nuisance exists.

We have examined the complaint carefully and respectfully disagree with the conclusions of the defendants. The complaint does state a cause of action both as to violation of the restrictive covenants and nuisance.

As to the restrictive covenants, they are to be interpreted as any other writing, *i.e.*, in construing documents words must be given their ordinary and customary meaning and not a strained or unnatural interpretation. *See Evco Corp. v. Ross*, 528 S.W.2d 20 (Tenn.1975) and other authorities too numerous to mention. Accordingly, we do not find the restrictive covenants to be so vague as to be unenforceable.

The complaint alleges that the defendants have allowed to accumulate on their real property, trash, junk and debris and that the same constitutes a nuisance. The complaint, therefore, puts the defendants upon notice as to what they will be called upon to answer. Since the adoption of the present Rule of Civil Procedure, the technical requirements of common law pleadings have been relaxed. *See* T.R.C.P. 8. We find the cause of action sounding in nuisance to be sufficiently stated. We find no merit in this issue. Accordingly, the chancellor was correct in overruling the motion to dismiss.

The next issues which we are called upon to address are basically factual issues. Our review is governed by Rule 13(d), Tennessee Rules of Appellate Procedure:

(d) Findings of Fact in Civil Actions.— Unless otherwise required by statute, review of findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise.

The property at issue here is located in Monroe County. Monroe County has no zoning ordinances in place. The subdivision, however, has restrictions. They are: (1) No mobile homes shall be placed on these lots; (2) House construction to be completed in reasonable time after starting; (3) Check with Health Department for well-site location.

The Morgans purchased their first tract of land in this subdivision in 1980.[1] They had a small cabin on the property which they eventually tore down apparently

1. The record indicates that the Morgans own more than one piece of property in the area, but is not explicit as to just how much land they own.

at the insistence of their neighbors. In 1989 or 1990, the Morgans began construction on their home. The Morgans were doing the work themselves and would work on the house as time and money allowed. They apparently moved into the structure sometime in 1992. For a while they used an outdoor toilet until the Health Department intervened. At the time of trial the interior had no walls and there was no electricity in the dwelling.

Mr. Morgan works for TVA at the Watts Bar facility. Because of this he is able to obtain materials for discount prices from TVA. Strewn about the yard were treated lumber, large pieces of glass, a refrigerator, a clothes locker, a wooden spool, an engine lift and many other items that Mr. Morgan had bought home for future use at some place and at some time.

Additionally, there is a large compost pile in the yard that ranges in height from over five feet to three or four feet.

This action was filed on August 24, 1993. Clearly, giving defendants the benefit of doubt,[2] almost three years is far beyond a reasonable time to complete an average residence. The record reflects that there is nothing exceedingly unusual about the residence that would require such an inordinate amount of time to complete.

The chancellor made the following findings of fact:

> The proof unequivocally shows, and the court finds, that the defendants began their construction five years ago in 1989. For some time the defendants utilized the facilities of an outdoor toilet. Finally, the Health Commissioner intervened and other facilities were provided. To this date, the oral proof and photograph reveal the exterior of the dwelling is far from complete. The proof also shows that only partial electrical wiring has been completed. It is explicitly clear that only a shell of a house is constructed, and much remains to be done on the interior and exterior.

The court further found that the defendants were financially able to complete the house.

The court in addressing the nuisance issue found that under the teachings of *Caldwell v. Knox Concrete Products, Inc.*, 54 Tenn.App. 393, 391 S.W.2d 5 (1964), the collection of the junk, material and trash as the defendants have done "constitutes a clear and unadulterated nuisance."

A nuisance has been defined as anything which annoys or disturbs the free use of one's property, or which renders its ordinary use or physical occupation uncomfortable. *Adams v. Hamilton Carhartt Overall Co.*, 293 Ky. 443, 169 S.W.2d 294 [1943]. In *City of Nashville v. Nevin*, 12 Tenn. App. 366 [336] [1930], it was said that a nuisance extends to everything that endangers life or health, gives offense to the senses, violates the laws of decency, or obstructs the reasonable and comfortable use of property. *See also Williams v. Cross*, 16 Tenn.App. 454, 459, 65 S.W.2d 198 (1932).

What is a reasonable use of one's property and whether a particular use is an unreasonable invasion of another's use and enjoyment of his property cannot be determined by exact rules, but must necessarily depend upon the circumstances of each case, such as locality and the character of the surroundings, the nature, utility and social value of the use, the extent and nature of the harm involved, the nature, utility and social value of the use or enjoyment invaded, and the like. *See Clinic & Hospital, Inc. v. McConnell*, 241 Mo.App. 223, 236 S.W.2d 384, 23 A.L.R.2d 1278 [1951]; Restatement, Torts, Secs. 822, 831, pp. 214, 265. *Caldwell v. Knox Concrete Products*, 54 Tenn.App. 393, 391 S.W.2d 5 (1964).

In that case [*Caldwell v. Knox Concrete*] incessant and disturbing noises were found to constitute a nuisance. In *Hendrix v. City of Maryville*, 58 Tenn. App. 457, 431 S.W.2d 292 [1968] a city dump offensive to sight and smell was held to constitute a nuisance and, similarly, in *Hagaman v. Slaughter*, 49 Tenn.App. 338, 354 S.W.2d 818 [1961], a junk yard where rats and mosquitos were allowed to con-

---

**2.** The trial court specifically found that the construction began "five years ago in 1989".

verge and breed, found to be a health hazard, was held to be a nuisance.

\*   \*   \*   \*   \*   \*

Every man or corporation must so use their own property as not to injure others. *City of Nashville v. Nevin,* 12 Tenn.App. 336. *And see* 39 Am.Jur. 296, Nuisances, Section 16.

*Wilson v. Farmers Chemical Association, Inc.,* 60 Tenn.App. 102, 444 S.W.2d 185 (1969).

In 58 Am.Jur.2d, Nuisances, § 1, we find the following discussion:

The term "nuisance" is incapable of an exact and exhaustive definition which will fit all cases, because the controlling facts are seldom alike, and because of the wide range of subject matter embraced under the term. Nevertheless, "nuisance" has been defined as a distinct civil wrong, and is used to designate the wrongful invasion of a legal right or interest, comprehending not only the wrongful invasion of the use and enjoyment of property, but also the wrongful invasion of personal legal rights and privileges generally. The term is so comprehensive that it has been applied to almost all wrongs which have interfered with the rights of the citizen in person, property or enjoyment of property, or comfort; a "nuisance" includes everything that endangers life or health or obstructs the reasonable and comfortable use of property, as well as *that which gives offense to the senses, or violates the law of decency.* (Emphasis added).

"Nuisance" has variously been defined as conduct that is either unreasonable, or unlawful and causes annoyance, inconvenience, discomfort, or damage to other, what which unlawful or does damage to another, anything wrongfully done or permitted which injures or annoys another in the enjoyment of his legal rights, anything that works injury, harm, or prejudice to an individual or the public, or which works hurt, inconvenience, or damage to another, or which works or causes injury, damage, hurt, inconvenience, annoyance, or discomfort to one in the legitimate enjoyment of his reasonable rights of person or property. Furthermore, a "nuisance" has been described as anything which causes a well-founded apprehension of danger, as any-

thing that essentially interferes with the enjoyment of life or property, and as something that is offensive, physically, to the senses, and which, by such offensiveness, makes life uncomfortable.

In this case, it seems to matter little which definition is used, the conditions under which the defendants maintain their property, as reflected by the record, constitute a nuisance. It has been held in *Hagaman v. Slaughter,* 49 Tenn.App. 338, 354 S.W.2d 818 (1961) that the aesthetic appearance of a junkyard does not alone constitute a nuisance. Here, the court went further and found that "such conglomeration of materials as the defendants have assembled constitutes a fertile breeding ground for undesirable vermin."

In our examination of the record and our inspection of the dramatic, vivid and exceedingly compelling photographs filed as exhibits at the trial convinces us that the evidence does not preponderate against the findings of the chancellor.

Accordingly, we affirm the judgment of the trial court. Costs of this appeal are taxed to the appellants and this cause is remanded to the trial court for the collection thereof and for entry of a judgment in accordance with this opinion in the event there has not been a compliance with the judgment of the trial court.

FRANKS and SUSANO, JJ., concur.