IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 18, 2002 Session

## ALEXIS JOHNSON and wife, GERRY JEAN JOHNSON, v. JESSIE DAVID MALONE and wife, NANCY MARIE MALONE, THOMAS MALONE and wife, REBECCA BETH MALONE

**Direct Appeal from the Chancery Court for Hamilton County**
**No. 00-0429      Hon. W. Frank Brown, III., Chancellor**

**FILED MAY 28, 2002**

**No. E2001-02106-COA-R3-CV**

Plaintiffs alleged their neighbor's chicken houses constituted a nuisance and sought abatement. The Chancellor determined the operation was not a nuisance. On appeal, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and CHARLES D. SUSANO, JR., J., joined.

Hallie H. McFadden, Chattanooga, Tennessee, for Appellants.

Lynne D. Swafford, Pikeville, Tennessee, for Appellees.

**OPINION**

In this action to abate a nuisance, the Chancellor, after hearing evidence, ruled in favor of defendants and plaintiffs have appealed.

Plaintiffs and defendants own adjoining tracts of land in a rural area of Hamilton County. Plaintiffs allege that in February of 2000, defendants built a chicken house and a chicken manure disposal facility on defendants' property in close proximity to plaintiffs' property, and that the exhaust fan from the chicken house "spewed noxious fumes from the chicken house directly into Plaintiffs' backyard." After the evidence had been presented, the Court filed a Memorandum Opinion which stated in pertinent part:

From a review of all testimony, the court concludes that the Plaintiffs have failed to carry their burden of proof on the issues of nuisance. There is no doubt that the area is an agricultural community and is zoned as such. The Malones already operated a chicken business on their property. After the Johnsons joined the neighborhood, the Malones expanded their business. Despite his testimony about his time on farms, it is apparent that Mr. Johnson, and his witnesses, would be characterized as a "city slicker" by everyone else who are "country folk." The infrequent smell of chickens and/or their waste products do not affect the country folk who live near the Malones.

The court notes that none of the neighbors testified for the Johnsons. All of the neighbors, who testified for the Malones, stated (in effect) that there was no nuisance (for various reasons). . . .

Further, the court notes that the testimony was undisputed that the newer chicken houses are better built and designed than were the older, original houses on the Malones' land. Also, the witnesses testified to the efficient manner in which the Defendants' business operated. The court finds that the fans are slanted downward toward the ground and/or berms and are not "aimed" at the Plaintiffs' home.

On appeal, plaintiffs insist that their evidence establishes a nuisance which should be abated.

In this jurisdiction, a nuisance has repeatedly been defined as "anything which annoys or disturbs the free use of one's property, or which renders its ordinary use or physical occupation uncomfortable. *Pate v. City of Martin*, 614 S.W.2d 46 (Tenn. 1981); *Caldwell v. Knox Concrete Products, Inc.*, 391 S.W.2d 5 (Tenn. Ct. App. 1964). Further, a nuisance "extends to everything that endangers life or health, gives offense to the senses, violates the laws of decency, or obstructs the reasonable and comfortable use of property." *Pate*. To determine whether a particular situation constitutes a nuisance, the court must look at the "locality and the character of the surroundings, the nature, utility and social value of the use, the extent and nature of the harm involved, the nature, utility and social value of the use or enjoyment invaded, and the like." *Id*. Thus, the issue of whether a nuisance exists pursuant to the above definition is a question of fact. *Caldwell*. Accordingly, our review of the Trial Court's decision is *de novo* with a presumption of correctness, unless the evidence preponderates against the Trial Court's findings of fact. Tenn. R. App. P. 13(d).

Plaintiffs argue the trial court erred by applying an incorrect standard in that they charge the Trial Court overemphasized the "community" factor. We cannot agree. The Trial Court considered the locality, and found the area was rural and had farms and other agricultural uses in place. The Trial Court credited the testimony of plaintiffs and their witnesses as to the odor of the chicken houses, but stated the smell was not offensive to the "country folk" who lived nearby. Thus, the Court properly considered the "locality and character of the surroundings". See *Caldwell.*

The Court properly considered the other applicable factors as well. Regarding the "nature, utility and social value of the use", the Court found that there was nothing illegal about the poultry farm, in fact, the proof was undisputed that it was an efficient, well-run operation. The proof was also undisputed that the farm served a valuable purpose for the Malones, in that it allowed them to keep and work at their farm.

Regarding the "nature, utility and social value of the use or enjoyment invaded", the Court found that plaintiffs' case seemed to "shrink" as the trial went on, indicating that the extent of the harm involved was not as great as originally alleged. The Court found that plaintiffs had not shown sufficient proof of harm, as they had not been driven from their home, or damage to their property. Our review establishes that the Chancellor considered all of the appropriate factors, and found that the plaintiffs had not proven their case. The evidence does not preponderate against the Trial Court's determination. Tenn. R. App. P. 13(d). *McCarty v. McCarty*, 863 S.W.2d 716 (Tenn. Ct. App. 1992).

Plaintiffs cite cases where the Court found the existence of a nuisance, but the outcome of these cases is dependent on the facts and circumstances of each. In the cases where the Court determined a nuisance existed, a common theme was that there was sufficient proof of unreasonable harm, such as an odor that drove people from their home, noises that were demonstrated to be ridiculously loud and interfered with one's ability to sleep, and further established diminution in property values. The Chancellor found plaintiffs failed to establish these elements, and we agree.

Finally, plaintiffs argue that the Chancellor erred in granting equitable relief to defendants when such was not pled as a defense nor tried with express or implied consent.[1] We pretermit this issue because we affirm the Chancellor's Judgment on other grounds.

The cost of the appeal is assessed to plaintiffs Alexis Johnson and Gerry Jean Johnson.

_____
HERSCHEL PICKENS FRANKS, J.

_____

[1] In the Memorandum, the Chancellor mentioned that it was inequitable for plaintiffs to allow defendants to go forward with building the chicken house and expending those resources when he basically "knew all along" that the chicken houses were going to create a problem for him.